RECEIVED
IN ALEXANDRIA, LA.
SEP 0 9 2009
TONY R. MOORE, CLERK
BY_____ DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAKE CHARLES DIVISION

| TAMARA TALBERT | : | DOCKET NO. 08-976 |
|---|---|---|
| VS. | : | JUDGE TRIMBLE |
| HOME FURNITURE COMPANY OF LAKE CHARLES, INC. et al | : | MAGISTRATE JUDGE KAY |

## MEMORANDUM RULING

Before the Court is "Defendants' Motion for Summary Judgment" (doc. #16) filed by Home Furniture Company of Lake Charles, Inc. and Home Furniture Company of Lafayette, Inc., wherein the movers seeks to have the lawsuit dismissed pursuant to Federal Rule of Civil Procedure 56 because there are no genuine issues of material fact and Defendants are entitled to judgment as a matter of law.

## FACTUAL STATEMENT

This case is about a sexual harassment claim. Plaintiff, Tamara Talbert, alleges that from approximately June 1, 2004 until her resignation on August 19, 2005, while she was employed by Home Furniture Company of Lake Charles, Louisiana, she was subjected to ongoing and unwanted sexual harassment by the customer service manager, Warren Joseph.[1][2] Ms. Talbert further alleges that from approximately November 1, 2004 until her resignation, she was subjected to job harassment or a hostile work environment by the customer service manager, Flint Davis.[3]

---

[1] ¶ 3, Petition for Damages, Attachment 1 to doc. #1.

[2] The Petition for Damages alleges that Mr. Joseph is a Customer Service Manager, however the briefs of the parties state that he is the warehouse supervisor.

[3] *Id.* ¶¶ 4 and 5.

For purposes of this motion only, Defendants, while reserving the right to contest the allegations, assume the harassment allegations are true, but are insufficient as a matter of law.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, indicate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[4] A fact is "material" if its existence or nonexistence "might affect the outcome of the suit under governing law."[5] A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party.[6] As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim."[7] Once the movant makes this showing, the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial.[8] The burden requires more than mere allegations or denials of the adverse party's pleadings. The non-moving party must demonstrate by way of affidavit or other admissible evidence that there are genuine issues of material fact or law.[9] There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no

---

[4] Fed. R.Civ. P. 56(c).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

[6] *Stewart v. Murphy*, 174 F.3d 530, 533 (5th Cir. 1999).

[7] *Vera v. Tue*, 73 F.3d 604, 607 (5th Cir. 1996).

[8] *Anderson*, 477 U.S. at 249.

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

reasonable trier of fact could find for the non-moving party.[10] If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[11]

## LAW AND ANALYSIS

In *Casiano v. AT&T Corp.*,[12] the Fifth Circuit has outlined a roadmap to be followed in all cases alleging sexual harassment by a supervisor. The first step is to determine whether the complaining employee has or has not suffered a "tangible employment action."[13] If the court determines that the employee has suffered a tangible employment action, then the case is classified as a "*quid pro quo*" case; if she has not, the suit is classified as a case of "hostile environment."[14]

In a *quid pro quo* case, the court must determine whether the tangible employment action actually resulted from her acceptance or rejection of the supervisor's alleged harassment.[15] If no such nexus is shown, then the employer is not liable for the supervisor's conduct.[16] If a nexus is proven, the employer is vicariously liable for the supervisor's behavior and cannot avail itself of the one and only affirmative defense provided in *Faragher v. City of Boca Raton*,[17] and *Burlington Industries v. Ellerth*.[18]

---

[10] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[11] *Anderson*, 477 U.S. at 249-50.

[12] 213 F.3d 278 (5th Cir. 2000).

[13] *Casiano*, 213 F.3d at 283.

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] 524 U.S. 775, 792 (1998).

[18] 524 U.S. 742 (1998).

If the plaintiff cannot prove that she suffered a tangible employment action, the case is deemed to be a hostile environment case. The plaintiff has the burden of proving that the harassment was not only severe or pervasive, but also that it was based on the plaintiff's sex and that it altered the terms and conditions of the plaintiff's employment.[19] If the allegations of harassment are not sufficiently severe or pervasive or are not based on sex, then the employer is not liable for the supervisor's conduct.[20] If, however, the allegations are found to rise to an actionable level, the employer is entitled to assert the *Faragher/Ellerth* affirmative defense.[21]

*Flint Davis*

Ms. Talbert alleges that she was subjected to a hostile work environment as a result of the following conduct by Flint Davis:

(1) failing to properly address Ms. Talbert's complaints regarding Mr. Warren,
(2) informing Ms. Talbert that his wife was away from home,
(3) making a joke to the delivery man that Ms. Talbert needed a man,
(4) a mirror was hung in Ms. Talbert's office, presumably to look at her; Ms. Talbert stated that every time she looked up Mr. Davis was staring at her,
(5) a window with a sliding glass door was placed in the wall between Ms. Talbert and Mr. Davis' office,
(6) on a few occasions, Mr. Davis requested that Ms.Talbert run personal errands such as going to the cleaners or a tailor; Ms. Talbert stated that when she objected, she was no longer required to run personal errands.
(7) listening in on Ms. Talbert's telephone calls.

Ms. Talbert asserts that when she objected to running personal errands for Mr. Davis, she started receiving negative evaluations. She submits an "Evaluation Form Additional Comments"[22] dated March 10, 2005 which indicates that Ms. Talbert's "major strength" is "her promptness on each

---

[19] *Casiano*, 213 F.2d at 284.

[20] *Id.*

[21] *Id.* at 284.

[22] Plaintiff's exhibit L.

task and assignments give [sic] to her," and that she "has a professional attitude when it comes to the customers; she needs to execute that same demeanor when dealing with fellow employees. Tamara could also show a more positive attitude with co-workers and not always magnify their weaknesses. Her personal opinions don't always need to be vocalized." Ms. Talbert also submits an evaluation dated August 1, 2005 [23] entitled Staff Counseling Form. The Form indicates that the "Reason for Counseling" is "other" but was allegedly caused by Ms. Talbert exhibiting a "negative attitude at work" toward a team member that had resigned. The evaluation was not signed by Ms. Talbert, nor is there any indication that Ms. Talbert was ever aware that it existed.

Ms. Talbert asserts that she did not complain to Ged Fleming, the CEO of Home Furniture, because Davis told her that Mr. Fleming voiced to him that he would get rid of anyone giving Davis problems, and further she was intimidated by Mr. Davis' close relationship with Mr. Fleming.

A hostile environment claim requires (1) sexually "discriminatory intimidation, ridicule and insults," which are (2) so sufficiently severe or pervasive that they (3) alter the conditions of employment and (4) create an abusive working environment.[24] In determining whether a workplace constitutes a hostile work environment, courts look at all the circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance.[25] An unfriendly work environment is insufficient to establish liability; rather, "the workplace [must be] permeated with discriminatory intimidation, ridicule, and insult that is

---

[23] Plaintiff's exhibit I.

[24] *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

[25] *Id.*

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[26] A plaintiff's allegations of harassment must satisfy both an objective and subjective standard - "the conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive."[27] Lack of "sensitivity" does not constitute actionable harassment.[28]

"Title VII was only meant to bar conduct that is so severe and pervasive that it destroys a protected class member's opportunity to succeed in the workplace."[29] The Supreme Court has stated that flirtation is part of ordinary socializing in the workplace and should not be mistaken for discriminatory conditions of employment.[30]

Having considered the summary judgment evidence and the applicable law, even though Mr. Davis' conduct was offensive, the Court does not find that it was severe or pervasive, nor is there any evidence that it affected the terms and/or conditions of Ms. Talbert's employment. Ms. Talbert rated her job performance as a customer service representative as a ten on a scale of one to ten, with ten being the highest.[31] She testified that she was always able to give 100% on the job and was

---

[26] *Id.* at 21.

[27] *Id.* at 21-22.

[28] *Faragher*, 524 U.S. at 787.

[29] *Weller v. Citation Oil & Gas Co.*, 84 F.3d 191, 194 (5th Cir. 1996), *cert. denied*, 519 U.S. 1055 (1997).

[30] *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 81 (1998). See also *Indest v. Freeman Decorating, Inc.*, 164 F.3d 258, 264 (5th Cir. 1999) ("playful sexual utterances will rarely poison the employee's working environment to the extent demanded for liability")

[31] Defendants' exhibit 2, Tamara Talbert depo. p. 14.

always able to complete her job duties.[32] Accordingly, the Court finds that the alleged harassment is insufficient to establish a genuine issue of material fact as to Defendants' title VII liability.

*Warren Joseph*

Plaintiff alleges that Warren Joseph engaged in the following improper conduct towards her:

(1) he called her on the telephone to ask her out and told her that "he thought [she] was sexy, good looking, fine."[33] Ms. Talbert testified that there was more than one phone call, but less than four (4) or five (5);[34]
(2) On one occasion, he told her that her "headlights was on," and "[she] was sexy and, you know,' why won't [she] give him a chance. And he was my (Ms. Talbert's) kids step daddy."[35]
(3) On one occasion in her office, he asked her out and said she "looked good" and was "fine."[36]
(4) On one occasion, Mr. Warren was standing by her car after work and he asked her out.[37]
(5) Other comments Mr. Warren made included asking Ms. Talbert where she lived in order for him to help her move furniture and to see her new place.[38]

Ms. Talbert further testified that these were the only allegedly improper comments and/or conduct by Mr. Warren.[39] Ms. Talbert asserts that she complained to her immediate supervisor, Flint Davis,[40] also an alleged harasser, but no action was taken concerning her complaints of Mr. Warren.

---

[32] *Id.* p. 15.

[33] Defendants' exhibit 2, depo. of Tamara Talbert, pp. 37-39.

[34] *Id.*

[35] *Id.* at pp. 40-41.

[36] *Id.* at p. 47.

[37] *Id.* at p. 48.

[38] *Id.* at p. 47.

[39] *Id.*

[40] Mr. Davis is listed as one of the members of management that an aggrieved employee should report a harassment claim.

Plaintiff alleges that because her complaints were not addressed after she reported them to Mr. Davis, she was forced to resign. She maintains that she was subjected to a hostile work environment and that her resignation amounted to a constructive discharge.

The evidence against Mr. Warren includes several instances when he asked Ms. Talbert out, he commented about her being "fine" or "sexy" and on one occasion, he waited by her car after work and asked her out. He also inquired as to where she was moving and asked her if she needed assistance. These comments are not so severe or pervasive that they altered Ms. Talbert's working conditions, and/or created an abusive work environment. Accordingly, the Court finds that Ms. Talbert has failed to submit evidence of a hostile work environment claim.

*Constructive Discharge*

To prove a constructive discharge, Ms. Talbert must be able to establish through competent summary judgment evidence, that her working conditions were so intolerable that a reasonable person in her position would have felt compelled to resign.[41] Whether a reasonable employee would feel compelled to resign depends on the circumstances, with special consideration of the following non-exclusive factors: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; and (7) offers of continued employment on terms less favorable than the employee's former status.[42]

In addition to the foregoing complaints, Ms. Talbert further asserts that after complaining to

---

[41] *Thompson v. Naphcare, Inc.*, 2004 U.S. App. LEXIS 23697, *14 (5th Cir. 2004).

[42] *Id.* at 20; see also *Mowbray v. American Gen'l Life Companies*, 2006 U.S. App. LEXIS 996, *12 (5th Cir. 2006).

Mr. Davis about Mr. Warren's unwanted advances, remarks and phone calls, Mr. Davis installed a window between his and Ms. Talbert's offices and also placed a mirror on a wall that allowed Mr. Davis to stare at her. Taking these allegations as true, the Court finds that such actions were not so intolerable that a reasonable person in Ms. Talbert's position would have felt compelled to resign. Furthermore, Ms. Talbert testified that she did not even consider quitting her job at Home Furniture until after she found out that she could go back to work for her prior employer.[43] The Court concludes that Ms. Talbert has failed to submit any evidence to support an allegation that she was constructively discharged.

## CONCLUSION

For the reasons set forth above, the motion for summary judgment filed by Home Furniture Company of Lake Charles, Inc. and Home Furniture Company of Lafayette, Inc. will be granted dismissing all claims made by Tamara Talbert against these defendants at her cost.

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 9th day of September, 2009.

JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[43] Defendants' exhibit 2, Tamara Talbert depo. p. 84.